1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JILL M. THAYER, State Bar No. 166428
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5954
    Fax:  (415) 703-1234
8   Email:  Jill.Thayer@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13
   **HUNG Q. HO,**                              C 07-04227 CW
14
                                 Petitioner,
15
          **v.**
16
   **MIKE KNOWLES, Warden,**
17
                                 Respondent.
18

19

20     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

21

22

23

24

25

26

27

28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JILL M. THAYER, State Bar No. 166428
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5954
    Fax:  (415) 703-1234
8   Email:  Jill.Thayer@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   OAKLAND DIVISION

13

14  **HUNG Q. HO,**                          C 07-04227 CW

15                          Petitioner,      **MEMORANDUM OF POINTS
                                             AND AUTHORITIES IN
16          **v.**                           SUPPORT OF ANSWER**

17  **MIKE KNOWLES, Warden,**

18                          Respondent.

19

20              **STATEMENT OF THE CASE**

21          On May 2, 2005, a jury found petitioner guilty of first degree burglary (Cal. Pen. Code,

22  §§ 459, 460(a)) and the court found true allegations that petitioner had two prior strike and serious

23  felony convictions (Cal. Pen. Code, §§ 667(a)-(i) & 1170.12).  Ex. 1, Clerk's Transcript ("CT") at

24  128-129.  On July 22, 2005, the court sentenced petitioner to 35 years to life.  CT at 223.

25          On May 1, 2006, the California Court of Appeal affirmed the judgment in an unpublished

26  opinion.  Ex. 6.  The California Supreme Court denied review on July 12, 2006.  Ex. 8.  The

27  California Supreme Court denied petitioner's petition for writ of habeas corpus on May 9, 2007.

28  Ex. 10.

1

## STATEMENT OF FACTS

2       The California Court of Appeal summarized the facts of the case as follows:

3       Hung Thi Ho has lived in the same home in San Jose for 21 years. There
is a gate between her front and her back yards. To open the gate, you have to
4       reach over the top of it and undo a latch. In the back of the house is a sliding-
glass door with a window next to it. The window has a lock.

5

6       On February 18, 2004, Ms. Ho bought a desk from Best Buy. Two
Vietnamese men delivered the desk on either February 21 or 27, 2004. Ms. Ho
took time off work and was there to meet the delivery men. One of them
7       knocked on the front door. She opened the door for them and told them to put
the desk in her daughter's room. They brought the desk in through the front
8       door and took it to her daughter's room. They went back to the truck to get the
boards needed to make the shelves, then came back and assembled the desk.
9       Afterwards, they left through the front door. Ms. Ho watched the two men the
entire time they were in her house, except while they assembled the desk. At
10      no time did the men go into her kitchen, into the room with the sliding-glass
door, or into her back yard.

11

12      Anthony Nguyen, an assistant manager at Best Buy, testified that
defendant and Minh Tran delivered Ms. Ho's desk. At the time, defendant was
a part-time employee of Best Buy. Mr. Tran testified that he and defendant
13      went to Ms. Ho's front door with the desk. When Ms. Ho answered the door
they took the desk inside. It took them two trips to bring the desk in, and then
14      they assembled it with a screwdriver and ratchet. They left through the front
door. They never went into the kitchen or the backyard.

15

16      On April 27, 2004, Ms. Ho left her house for work around 9:00 a.m. The
back window was locked when she left. Sometime in the afternoon her
daughter called to tell her that a window on the back of her house was broken.
17      She told her daughter to leave the house and then she called the police. She
went home and found that the window on the back of her house was broken, its
18      screen was off, and a screwdriver was near the door. She also found that a VCR
and a DVD player were missing from the room next to the kitchen, and a VCR
19      and a DVD player were missing from her daughter's room. An officer came to
her home that same day.

20

21      Detective Robert Fischer was dispatched to Ms. Ho's house at
approximately 4:00 p.m. on April 27, 2004. He spoke with Ms. Ho and went
inside the house. He saw a window at the back of the house had broken glass
22      on the inside windowsill. Two panes at the lower center of the window, near
the middle latch and lock, were broken. The window screen was on the ground
23      in the backyard to the left of the window. He dusted the window for
fingerprints. He found several smudges and one clear print on the outside of the
24      window, to the left of the broken panes. A screwdriver found inside the home
was given to him by Ms. Ho's daughter as evidence.

25

26      Michael Valverde testified as an expert in fingerprint collection,
documentation, comparison and analysis. He was one of two examiners who
compared the latent print Detective Fischer found with fingerprints in his
27      database. He determined that the latent print matched the left thumb on
defendant's 1987 10-print fingerprint card. The match was verified by another
28      fingerprint examiner. Valverde testified on cross-examination that a fingerprint

1  can remain on a glass surface under optimum conditions for years, so he has no
   idea how long the latent print was on the surface from where it was collected.

2

3  Ms. Ho testified that she does not know defendant, nor does she recognize
   him from the desk delivery or otherwise.  He is not related to her and has never
   lived with her or her family.  She never gave him permission to go into her

4  backyard or her house, and she did not give him permission to take the VCRs
   or DVD players from her house.

5

6  Ex. 6 at 1-2.

7  **ARGUMENT**

8  **I.**

9  **STANDARD OF REVIEW**

10      Federal habeas corpus review of a state judgment is governed by the Antiterrorism and

11  Effective Death Penalty Act of 1996 (AEDPA).  Under the AEDPA, the federal court has no

12  authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an

13  unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

14  A state court's decision is "contrary to" law if the state court arrives at a conclusion opposite to that

15  reached by the Supreme Court on a question of law, or reaches a different conclusion based on facts

16  materially indistinguishable from a Supreme Court case.  *Williams v. Taylor*, 529 U.S. 362, 413

17  (2000).  A state court's decision constitutes an "unreasonable application" of Supreme Court

18  precedent if the state court identifies the correct governing legal principles, but the application of

19  law to the facts is not merely erroneous but objectively unreasonable.  *Id.* at 411-13.  The AEDPA

20  imposes a "highly deferential" standard for evaluating state court rulings and "demands that state

21  court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

22  (per curiam).  In conducting habeas review, federal courts presume "that state courts know and

23  follow the law."  *Id.*

24

25

26

27

28

## II.

**THE CALIFORNIA COURT OF APPEAL DID NOT UNREASONABLY APPLY SUPREME COURT AUTHORITY IN DETERMINING THAT GIVING CALJIC NO. 2.02 INSTEAD OF CALJIC NO. 2.01 DID NOT CONSTITUTE FEDERAL CONSTITUTIONAL ERROR**

Petitioner contends that the trial court's error in giving CALJIC No. 2.02 instead of CALJIC No. 2.01 constitutes federal constitutional error. His claim lacks merit.

Instructional errors under state law do not provide a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for instructional error, the petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Id.* at 72. An instruction is not judged in artificial isolation, but "must be considered in the context of the instructions as a whole and the trial record." *Id.* "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

In *McMillan v. Gomez*, 19 F.3d 465, 468 (9th Cir. 1994), the defendant claimed that the trial court erred in giving CALJIC No. 2.01 instead of CALJIC No. 2.02. His objection to the instruction was a "quibble," and failed to raise a genuine federal constitutional issue. *Id.* at 469.

In the present case, the California Court of Appeal summarized the facts regarding the challenged instructions as follows:

> In instructing the jury, the court gave CALJIC No. 2.00 [direct and circumstantial evidence-inferences],[1/] and CALJIC No. 2.02 [sufficiency of

---

1. "Evidence consists of the testimony of witnesses, writings, material objects, or anything presented to the senses and offered to prove the existence or nonexistence of a fact. [¶¶] Evidence is either direct or circumstantial. Direct evidence is evidence that directly proves a fact. It is evidence which by itself if found to be true establishes that fact. [¶¶] Circumstantial evidence is evidence that if found to be true proves a fact from which an inference or existence of another fact may be drawn. [¶¶] An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence. [¶¶] It is not necessary that facts be proved by direct evidence. It can also be proved by circumstantial evidence or by a combination of direct or circumstantial evidence. Both direct and circumstantial evidence are acceptable as a means of proof. Neither is entitled to any greater weight than the other." (See CALJIC No. 2.00.)

1    circumstantial evidence to prove specific intent or mental state].[2/] The court did
2    not give, and the record does not indicate that defense counsel requested,
     CALJIC No. 2.01 [sufficiency of circumstantial evidence-general].[3/]

3    Ex. 6 at 7-8, renumbered footnotes in original.

4    The state court determined that the court erred in giving CALJIC No. 2.02 instead of

5    CALJIC No. 2.01, which a trial court must give sua sponte when circumstantial evidence is

6    substantially relied on for proof of guilt.  Ex. 6 at 8.  The state court determined that the error did

7    not constitute federal constitutional error under *Sullivan v. Louisiana*, 508 U.S. 275, 278-82 (1993),

8    however.  "The error here was instructing on the sufficiency of circumstantial evidence, not in

9    instructing on reasonable doubt.  The court instructed the jury with CALJIC No. 2.90, which

10   correctly defines reasonable doubt."  Ex. 6 at 8.

11   The state court's ruling that the error did not amount to federal constitutional error was

12   not objectively unreasonable.  The California Court of Appeal reasonably determined that no federal

13   constitutional error occurred under *Sullivan v. Louisiana*, 508 U.S. 275, because the jury was

14   _____

15   2.  "The specific intent with which an act is done may be shown by the circumstances
     surrounding the commission of the act. However, you may not find the defendant guilty of the crime
16   charged unless the proved circumstances [are] not only, one, consistent with the theory that the
     defendant had the required specific intent but, two, can't be reconciled with any other rational
17   conclusion. [¶¶] Also, if the evidence as to any specific intent permits two reasonable interpretations,
     one of which points to the existence of the specific intent and the other to its absence, you must
18   adopt that interpretation which points to its absence. If on the other hand one interpretation of the
     evidence as to the specific intent appears to you to be reasonable and the other interpretation to be
19   unreasonable, you must accept the reasonable interpretation and reject the unreasonable."  (See
20   CALJIC No. 2.02)

21   3.  "However, a finding of guilt as to any crime may not be based on circumstantial evidence
     unless the proved circumstances are not only (1) consistent with the theory that the defendant is
22   guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶¶] Further,
     each fact which is essential to complete a set of circumstances must be proved beyond a reasonable
23   doubt. In other words, before an inference essential to establish guilt may be found to have been
     proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily
24   rests must be proved beyond a reasonable doubt. [¶¶] Also, if the circumstantial evidence [as to any
     particular count] permits two reasonable interpretations, one of which points to the defendant's guilt
25   and the other to [his][her] innocence, you must adopt that interpretation that points to the defendant's
     innocence, and reject that interpretation that points to [his][her] guilt. [¶¶] If, on the other hand, one
26   interpretation of this evidence appears to you to be reasonable and the other interpretation to be
27   unreasonable, you must accept the reasonable interpretation and reject the unreasonable."  (CALJIC
     No. 2.01.)
28

1   properly instructed on reasonable doubt. Ex. 6 at 8.  That state law required a minor variation in the

2   instruction on the use of circumstantial evidence in the present case does not provide a basis for

3   federal habeas relief.  *Estelle v. McGuire*, 502 U.S. at 71-72 ("the fact that the instruction was

4   allegedly incorrect under state law is not a basis for habeas relief"); *Menendez v. Terhune,* 422 F.3d

5   1012, 1029 (9th Cir. 2005) ("'Failure to give [a jury] instruction which might be proper as a matter

6   of state law,' by itself, does not merit federal habeas relief.").   Petitioner's failure to request

7   CALJIC No. 2.01 at trial further supports the California Court of Appeal's decision.  *Henderson v.*

8   *Kibbe*, 431 U.S. at 154 ("It is the rare case in which an improper instruction will justify reversal of

9   a criminal conviction when no objection has been made in the trial court.").

10          Further, constitutional error occurs only when there is a reasonable likelihood the jury

11  misapplied the instructions in a way that violates the Constitution.  *Estelle v. McGuire*, 502 U.S. at

12  72.  The state court concluded that the error was harmless under state law, reasoning as follows:

13          Based on the instructions and arguments of counsel, the jury was fairly
            advised how to evaluate circumstantial evidence and was instructed to draw
14          reasonable inferences and weigh the competing inferences from the evidence.
            Here, although the more inclusive language of CALJIC No. 2.01 might have
15          been more suitable, there was no possibility that the jury would be misled by
            CALJIC No. 2.02 into believing that the requirements embodied in that
16          instruction could not be applied to the question of whether defendant entered
            Ms. Ho's residence with the required specific intent, as was required for the
17          conviction of first degree burglary.  Defendant does not contest the sufficiency
            of the evidence to support his conviction.  Accordingly, we conclude that it is
18          not reasonably probable that defendant would have achieved a better result had
            CALJIC No. 2.01 been given rather than CALJIC No. 2.02.
19

20  Ex. 6 at 10.

21          The instruction given to the jury, CALJIC No. 2.02, was not incorrect, but merely

22  narrower than CALJIC No. 2.01.  CALJIC No. 2.02 stated that the jury must decide in favor of the

23  defendant if the circumstantial evidence allowed more than one reasonable interpretation as to

24  whether the defendant had the required specific intent, while CALJIC No. 2.01 stated the identical

25  rule without limiting it to the specific intent issue.  As the state court noted, the prosecutor and

26  defense attorney  argued that the jury must decide in the defendant's favor if the circumstantial

27  evidence permits two reasonable interpretations, without suggesting that the rule was limited to

28  specific intent. Ex. 6 at 9-10;  Ex. 2, Reporter's Transcript ("RT") at 162-62, 165-66, 172-73.  *See*

1    *Middleton v. McNeil*, 541 U.S. 433, 438 (2004) (per curiam) (prosecutor's argument resolving

2    ambiguity in instruction in defendant's favor mitigates effect of error).  The court instructed the jury

3    that it must find the defendant guilty beyond a reasonable doubt.  Accordingly, the minor state law

4    instructional error did not create a reasonable likelihood that the jury misunderstood its task.

5            Finally, even if federal constitutional error occurred, it did not have a substantial and

6    injurious effect on the jury's verdict.  "[I]n § 2254 proceedings a court must assess the prejudicial

7    impact of constitutional error in a state-court criminal trial under the 'substantial and injurious

8    effect' standard set forth in *Brecht*, 507 U.S. 619 [1993], whether or not the state appellate court

9    recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable

10   doubt' standard set forth in *Chapman*, 386 U.S. 18."  *Fry v. Pliler*, 127 S.Ct. 2321, 2328 (2007).

11   For the reasons explained above, giving CALJIC No. 2.02 instead of No. 2.01 was not prejudicial.

12                                                    **III.**

13   **THE CALIFORNIA COURT OF APPEAL'S DETERMINATION THAT
     THE TRIAL COURT'S EVIDENTIARY RULING DID NOT VIOLATE**
14   **PETITIONER'S RIGHTS TO DUE PROCESS OR EFFECTIVE
     ASSISTANCE WAS NOT AN UNREASONABLE APPLICATION OF**
15   **CLEARLY ESTABLISHED SUPREME COURT AUTHORITY**

16           Petitioner contends that the trial court's decision to exclude evidence of petitioner's two

17   prior first degree burglary convictions, unless petitioner introduced evidence or insinuated that his

18   fingerprint got on the victim's window by mistake or in an innocent way, violated his rights to

19   present a defense and effective assistance of counsel.  Pet. at 6 & Attachment at 7-12.  The issue is

20   not cognizable because the evidence of petitioner's prior burglary convictions was never admitted

21   into evidence.  In any event, the state court's decision that the trial court's ruling did not violate

22   petitioner's rights to assistance of counsel and to present a defense was not an unreasonable

23   application of clearly established Supreme Court authority.

24   **A.    Procedural Background**

25           The prosecutor moved in limine under California Evidence Code section 1101(b)[4] to

26

27   _____

28        4.  California Evidence Code section 1101(b) is analogous to Federal Rule of Evidence
     404(b).

admit evidence of petitioner's two prior first degree burglary convictions to prove his intent to steal

in the current burglary and the absence of an innocent mistake.  In both prior first degree burglaries,

which occurred in 1987 and 1989, petitioner obtained access to a home during the day through a side

or rear window and took electronic equipment.  CT 45-51.

The trial court ruled as follows:

> I have ruled tentatively and I will rule at this time as a final ruling that the People's case-in-chief should not include these [California Evidence Code section] 1101(b) items unless the defendant puts on evidence for or puts on cross-examination or insinuates there is a mistake or an innocent way the fingerprint got on the window where the home was broken into.  We had a discussion about where the line would be drawn.  [Defense counsel] understood that beyond a reasonable doubt he could argue and he could do his job and he could vigorously defend his client, but if he says things such as quote, well, we all know what happens when delivery guys go to a home and check if people are there, that that would open the door because it is indicating that the fingerprint got on there by a mistake or innocent way and puts the specific intent at issue.  So that there is no problem in this area before any evidence of any prior criminality of the defendant is mentioned in any way in front of the jury I am ordering that both attorneys need to get a ruling from the judge by way of approaching or taking a recess so that it's not done on the fly, but that the court is allowed critical analysis and reconsideration.  And it's not clear whether the defendant is testifying yet or not, that would also be a factor in the court's decision depending on what the testimony is.

RT 20-21.

Prior to the presentation of evidence, the trial court disclosed that defense counsel had

asked if he could ask the fingerprint examiner if he could tell how long the print had been on the

window and still avoid introduction of the prior convictions.  The court "indicated I'm allowing the

question because it goes towards the signs of degradation of fingerprint versus nondegradation of

fingerprints and the defense has to put on a defense."  RT 31.  Responding to the prosecutor's

objections, the court continued:

> My prior ruling regarding if the defendant puts on a defense that the defendant put the fingerprint on the backyard window when he was looking for the occupants in the house or it implies that, then the intent is squarely at issue and the priors would come in under [California Evidence Code section 1101(b)].  The People argued previously that intent is an issue whenever the declarant pleads not guilty.  I indicated that is true, however, the court has taken a conservative view to protect the defendant's rights.

RT 31-32.

Defense counsel argued that the court's ruling limited his defense to the science of the

1  fingerprints and the cross-examination of the witnesses regarding what occurred during the delivery,

2  and requested clarification of the extent to which he could probe the witnesses regarding the details

3  of the delivery without opening the door to the prior convictions. RT 34. The court responded that

4  it would have to hear whether defense counsel's questions were designed to show that petitioner

5  innocently put his finger on the window during the delivery or to test the witnesses's memories

6  regarding the delivery. RT 36. The prosecutor responded that petitioner's defense was limited by

7  his own choice "to try and avoid creating a situation where rebuttal evidence as to a defense theory

8  becomes viable." RT 37. The prosecutor continued:

> Defense is not limited in any way. The problem is they just don't like the evidence that's going to become relevant if they go down that line of defense. It's the defendant's choice. If he wants to argue that the print was left there in February, he's entitled to. I want the record to be clear. He's not being prohibited from doing that. [¶] The problem is then it becomes relevant this past situation, actually two situations, where the same type of victim, the same type of day, same type of crime, same type of item stolen, becomes very probative as to whether or not he's telling the truth when he says or when he argues that he left the print there two months before the burglary happened.

RT 37.

> The California Court of Appeal summarized the remaining arguments and rulings as follows:

> After all witnesses had testified, but before the parties rested, in a hearing outside the presence of the jury, the prosecutor contended that defense counsel's cross-examination of Ms. Ho and Mr. Tran was intended to create an inference that defendant could have left his print somewhere else in the house without either of them being able to see. He contended that defendant's cross-examination of these witnesses was designed to undermine the witnesses' credibility, and that his cross-examination of Mr. Valverde was meant to bolster his claim that defendant's print could have been left in February and survived through April. The court responded: "I find that the questions to this point would not rise to the level of me overruling my in limine ruling on the [California Evidence Code section] 1101(b) so that ruling will stand. We still have the closing arguments. We'll see how that plays out, how [defense counsel] uses the information or doesn't use the information, and then we'll look at it again."

> Defendant did not testify. After the prosecutor rested, defense counsel rested without calling any witnesses.

> The prosecutor then argued to the jury that the "[c]ircumstantial evidence in this case only points to the defendant burglarizing this house." He argued that defendant was "casing" the house when he made the desk delivery, and that he returned a few months later when nobody was home, broke in, and took VCRs and DVD players, including two from the room where he set up the desk.

1    Defense counsel argued that the case was "based on circumstantial
2    evidence and circumstantial evidence is a chain [of] inferences that you can
     make from whatever the evidence shows. And like any chain, it is only as
3    strong as its weakest link." "You can't extrapolate from that evidence and
     determine what happened beyond a reasonable doubt. And that's what you need
4    to do in this case is based on the evidence and your interpretation of what that
     evidence is, did the district attorney prove to you that [defendant] burglarized
     that house beyond a reasonable doubt with that evidence, that it's clear in your
5    mind that it had to be him? That's your job. [¶] Thank you." The jury
     deliberated for approximately 30 minutes before reaching its verdict.
6

7    Ex. 6 at 4.

8    **B.    Petitioner's Claim Is Not Preserved**

9    By tailoring his case to avoid the introduction of his prior burglary convictions, petitioner

10   has not preserved his claim regarding the trial court's ruling.  The state court in the present case

11   aptly observed that "[t]he court's ruling in this case placed defendant in a situation similar to the

12   dilemma often faced by defendants who must decide whether or not to testify after the trial court

13   rules that the defendant's priors are admissible for impeachment."  Ex. 6 at 7.  The Supreme Court

14   in *Luce v. United States*, 469 U.S. 38, 41-43 (1984) held that "to raise and preserve for review the

15   claim of improper impeachment with a prior conviction, a defendant must testify."  *Id.* at 43;  *see*

16   *also United States v. Johnson*, 903 F.2d 1219, 1222 (9th Cir. 1990).  The state court cited *People*

17   *v. Collins*, 42 Cal.3d 378, 383-88 (1986), the California Supreme Court case that adopted the rule

18   announced in *Luce* in California.  A state court's ruling is given deference under the AEDPA as long

19   as the state standard is equivalent to, or stricter than, the controlling Supreme Court authority.  *Early*

20   *v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

21   "A reviewing court is handicapped in any effort to rule on subtle evidentiary questions

22   outside a factual context."  *Luce*, 469 U.S. at 41.  "Any possible harm flowing from a district court's

23   *in limine* ruling permitting impeachment by a prior conviction is wholly speculative" where the

24   defendant does not testify.  *Id.*  A trial court's ruling may change as the case unfolds, and a court

25   may alter a previous ruling.  Moreover, it cannot be assumed that the prosecution would have used

26   the prior conviction to impeach, or that the ruling motivated the defendant's decision not to testify.

27   *Id.* at 42.  In addition, almost any error in permitting impeachment "would result in the windfall of

28   automatic reversal," where the error presumptively kept the defendant from testifying.  *Id.*

Memorandum of Points and Authorities in Support of Answer - C 07-04227 CW

1     In the present case, since petitioner never argued or presented evidence that his print got

2   on the window in February, evidence of his prior burglary convictions was never introduced.

3   Accordingly, any harm from the trial court's ruling is speculative.  It is impossible to guess exactly

4   what evidence or argument petitioner might have introduced or made, or what evidence or argument

5   the prosecution would have introduced or made in response, had the trial court made a different

6   ruling.  Also, as where a defendant has chosen not to testify, it is impossible to engage in harmless

7   error analysis since petitioner tailored his defense to preclude introduction of evidence of his prior

8   convictions.  Accordingly, the state court's determination that the present case was similar to the

9   situation where a defendant does not testify after the trial court rules his priors are admissible was

10   not an unreasonable application of clearly established Supreme Court authority, and thus petitioner's

11   claim is not preserved.

12    **C.   The State Court's Ruling Was Not Contrary To Or An Unreasonable**

13         **Application Of Supreme Court Authority**

14     The state court determined that petitioner was not precluded from presenting a defense or

15   denied effective assistance because of the trial court's in limine ruling.  The state court's ruling was

16   not contrary to or an unreasonable application of Supreme Court authority.

17     "A state court's procedural or evidentiary ruling is not subject to federal habeas review

18   unless the ruling violates federal law, either by infringing upon a specific federal constitutional or

19   statutory provision or depriving the defendant of the fundamentally fair trial guaranteed by due

20   process.  Thus, a federal court cannot disturb on due process grounds a state court's decision to

21   admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial

22   that it rendered the trial fundamentally unfair."  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.

23   1995) (citations omitted).

24     The due process clause requires "that criminal defendants be afforded a meaningful

25   opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984);

26   *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  The right to introduce relevant evidence is not

27   unlimited, but may bow to accommodate other legitimate interests in the criminal trial process.

28   *Michigan v. Lewis*, 500 U.S. 145, 149 (1991).  The right to present a defense is abridged only by

Memorandum of Points and Authorities in Support of Answer - C 07-04227 CW

arbitrary rules of evidence that infringe on a weighty interest of the accused.  *Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006).  Moreover, while a total denial of the opportunity to make a closing argument constitutes a denial of a criminal defendant's right to make a defense, "the trial court "must be and is given great latitude in controlling the duration and limiting the scope of closing summations."  *Herring v. New York*, 422 U.S. 853, 859, 862 (1975).

To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  Tactical decisions are given wide latitude.  *Id.* at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  In addition, under AEDPA the question is whether the state court applied *Strickland* in an objectively unreasonable manner.  *Bell v. Cone*, 535 U.S. 685, 698-699 (2002).  Thus, federal habeas review of a claim of ineffective assistance is "doubly deferential."  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

The state court described petitioner's defense, and the theory he contends he was prevented from presenting, as follows:

> The evidence showed that defendant was at Ms. Ho's house in February in order to deliver a desk, that defendant's fingerprint was found on the outside of a window in the back of Ms. Ho's house after the house was burglarized in April, and that it was impossible to tell how long that fingerprint had been on the glass.  Defense counsel argued to the jury that this evidence was not sufficient to prove beyond a reasonable doubt that he entered Ms. Ho's house in April with the intent to steal.  This is a reasonable and proper defense theory of the case, based on the evidence presented, so defendant was not prevented from presenting any defense.

> The theory of the case that defendant contends he was precluded from putting forth was that "he had placed the fingerprint on the window in February rather than April."  This defense theory was that defendant's fingerprint on the outside of the back window of Ms. Ho's house, which the prosecutor argued was circumstantial evidence of defendant's entry of the house in April with the intent to steal, was instead left when defendant delivered the desk in February. The defense theory was intended to negate the inference that defendant entered the house in April, and to provide an innocent explanation that the defendant's print was placed on the back window when he was there in February to deliver the desk and when he had no intent to steal.

Ex. 6 at 5.

1    The state court noted that California Evidence Code section 1101(b) permits introduction

2  of otherwise inadmissible evidence that a defendant committed a prior crime if it is relevant to prove

3  some fact, such as intent or absence of mistake or accident, other than the defendant's disposition

4  to commit such an act.  The state court also noted that the jury was instructed that, "to find defendant

5  guilty of first degree burglary, it had to find that defendant entered an inhabited dwelling house and

6  that, at the time of the entry, defendant had the specific intent to steal and take away someone else's

7  property, and intended to deprive the owner permanently of that property."  Ex. 6 at 5.

8    The state court concluded that the trial court's ruling was proper, and did not preclude

9  petitioner from putting forth a defense, reasoning as follows:

> Defense counsel conceded below that defendant's prior residential burglaries were sufficiently similar to the charged offense to support the inference that he probably harbored the intent to steal in the latest incident, and defendant does not now contend otherwise.  Had defendant argued that he had placed the fingerprint on the window in February, he would have specifically placed his intent in issue by admitting the act of placing the fingerprint but denying doing so with criminal intent.  The court did not err or abuse its discretion in ruling that, if defendant placed his intent at issue by putting forth this alternative theory of the case that defendant placed his print on the window in February and had no criminal intent at that time, rebuttal evidence of defendant's prior residential burglary convictions could be admitted.

> The court's ruling did not preclude defendant from putting forth a defense. Defendant was able to cross-examine Ms. Ho and Mr. Tran regarding their memories of what happened at Ms. Ho's residence in February when defendant and Mr. Tran delivered the desk.  Defendant was also able to cross-examine the fingerprint expert regarding the nondegredation of fingerprints.  The court still did not allow the prosecutor to present evidence of defendant's prior similar offenses.  Defense counsel's decision regarding how to proceed with the defense was a matter of trial strategy.

Ex. 6 at 6.

22    In the present case, petitioner had the opportunity to present the defense and to make the

23  argument that his fingerprint got on the window in February, but counsel reasonably chose to forgo

24  that defense to avoid the introduction of relevant evidence that petitioner had previously committed

25  two virtually identical burglaries.  *See Lord v. Wood*, 184 F.3d 1083, 1085 (9th Cir. 1999)

26  ("Omission of an item of proof may seem foolish until one understands the tradeoffs counsel would

27  have had to make to include it.").  Petitioner cites and respondent has found no Supreme Court

28  authority that a ruling to admit evidence based on a criminal defendant's defense violates the

1  defendant's right to present a defense or make an argument. Accordingly, the California Court of

2  Appeal's determination that the trial court's ruling did not prevent petitioner from presenting his

3  defense or making an argument was not contrary to or an unreasonable application of Supreme Court

4  authority.

5          In addition, the state court's conclusion that evidence of petitioner's prior residential

6  burglaries on rebuttal was relevant, and thus its introduction would not have violated due process,

7  was not contrary to or an unreasonable application of clearly established Supreme Court authority.

8  *Estelle v. McGuire*, 502 U.S. at 70 (admission of prior injury evidence did not violate due process

9  because it was relevant to prove intent); *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)

10 ("Only if there are *no* permissible inferences the jury may draw from the evidence can its admission

11 violate due process"); *see also Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006) (whether

12 introduction of prior bad acts to prove propensity violates due process has not been clearly

13 established by the Supreme Court).

14          Petitioner's reliance on *Conde v. Henry*, 198 F.3d 734 (9th Cir. 2000) is unwarranted,

15 since it is not a Supreme Court decision, and, in any event, the state court's determination that

16 *Conde* is distinguishable was not unreasonable. Only the Supreme Court's holdings are binding on

17 the state courts and only those holdings need be reasonably applied. *Williams*, 529 U.S. at 412;

18 *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Accordingly, habeas relief is not available

19 under *Conde*.

20          In any event, the state court's determination that *Conde* was inapplicable to the present

21 case is not unreasonable. The state court distinguished the present case from *Conde*, reasoning as

22 follows:

23          In *Conde*, the defense had two inconsistent theories of the case and the
           trial court's ruling erroneously precluded defense counsel from presenting
24         evidence on and arguing one of his alternative theories. (*Conde*, *supra*, 198
           F.3d at p. 739.) In the case before us, the trial court's ruling did not prohibit
25         defense counsel from presenting evidence on and arguing defendant's theory
           of the case that he did not commit the burglary. Rather, the court simply ruled
26         that if defendant intended to argue that his fingerprint was placed on Ms. Ho's
           back window in February, then the prosecution would be permitted to introduce
27         rebuttal evidence of defendant's prior residential burglaries. We have already
           concluded that the trial court did not err or abuse its discretion in making this
28         ruling. After the trial court's ruling, the defendant was able to cross-examine

1  witnesses regarding their memories of what happened in February and was able
   to present evidence regarding the degradation of fingerprints. The record
2  indicates that defendant's decision to forgo presenting additional defense
   evidence and argument after the trial court's ruling was a reasonable tactical
3  decision, which we do not second-guess.

4  Ex. 6 at 6.

5      The state court's denial of petitioner's claim was not contrary to or an unreasonable

6  application of Supreme Court authority. Petitioner's claim was not preserved because evidence of

7  the prior convictions was never introduced. The state court's determination that petitioner was not

8  prevented from presenting evidence or arguing his theory of the case, and that the decision to avoid

9  introduction of the prior convictions was a reasonable tactical decision, was not contrary to or an

10  unreasonable application of Supreme Court authority.

11                                    **IV.**

12  **THIS COURT LACKS JURISDICTION OVER THE RESTITUTION
    FINE ISSUE**

13

14      Petitioner contends his attorney rendered ineffective assistance by failing to object to the

15  amount of the restitution fine. Pet. at 6 & Attachment at 13-14. An order of restitution does not

16  satisfy the "in custody" requirement of 28 U.S.C. § 2254(a).

17      Federal jurisdiction over a habeas petition arising from a state court judgment is limited

18  to persons "in custody" pursuant to that judgment. 28 U.S.C. § 2254(a). Fines do not meet the "in

19  custody" requirement. *Williamson v. Gregoire,* 151 F.3d 1180, 1183 (9th Cir.1998). Raising the

20  restitution claim with other claims seeking release from custody does not confer jurisdiction, nor

21  does framing the issue as one of ineffective assistance. *See United States v. Thiele,* 314 F.3d 399,

22  402 (9th Cir. 2002) (interpreting 28 U.S.C. § 2255).

23      To the extent the Court can consider the claim in the context of the Sixth Amendment, the

24  state court rejected that claim. It found that the trial court was not required to impose a $7,000 fine

25  instead of a $10,000 fine under the formula, and that petitioner had not shown that the trial court

26  would have imposed a lesser restitution fine had defendant's counsel objected, thus petitioner failed

27  to meet his burden to establish prejudice. Exh. 6 at 11. Petitioner offers nothing more in this Court

28  to support his assertion that trial court would have imposed a lesser fine if counsel had raised an

Memorandum of Points and Authorities in Support of Answer - C 07-04227 CW

1    objection. The state court's conclusion was not unreasonable. *See Woodford v. Visciotti*, 537 U.S.

2    at 26-27.

3                                             **V.**

4       **USE OF PETITIONER'S PRIOR STRIKE AND SERIOUS FELONY**

         **CONVICTIONS DID NOT VIOLATE HIS RIGHTS TO DUE PROCESS**

5       **AND EQUAL PROTECTION**

6       Petitioner contends the use of his prior strike and serious felony convictions in the present

7    case violate his rights to due process and equal protection because the convictions had not been used

8    against him before, even though they were available to the prosecution. Pet. at 6 & Attachment at

9    15. This claim lacks merit.

10       The conscious exercise of selectivity in application of enhancements for prior convictions

11    is not a federal constitutional violation, unless the decision is based on an unjustifiable standard such

12    as race or religion. *Oyler v. Boles*, 368 U.S. 448, 456 (1962). No impermissible reason is present

13    in this case. That petitioner's prior convictions were charged and applied in the present case, but

14    not in prior cases, does not violate equal protection.

15                                             **VI.**

16       **USE OF PETITIONER'S PRIOR STRIKE AND SERIOUS FELONY**

         **CONVICTIONS DOES NOT VIOLATE THE PLEA BARGAINS WHICH**

17       **LED TO THE PRIOR CONVICTIONS, EX POST FACTO PRINCIPLES**

         **OR THE PROHIBITION AGAINST CRUEL AND UNUSUAL**

18       **PUNISHMENT**

19       Petitioner contends the use of his prior convictions and prior prison terms violated his

20    prior plea bargain agreements and constitutional prohibitions against ex post facto laws and cruel

21    and unusual punishment. Pet. at 6 & Attachment at 16. These claims are meritless.

22       Petitioner did not raise the claim that the use of his prior convictions violated the

23    prohibition against cruel and unusual punishment in his petition for review or in his state habeas

24    petition. Exs. 7 & 9. A petition for writ of habeas corpus may not be granted unless the petitioner

25    has exhausted available state court remedies. 28 U.S.C. § 2254(b), (c)); *Rose v. Lundy*, 455 U.S.

26    509, 510 (1982); *Williams v. Stewart*, 441 F.3d 1030, 1041 (9th Cir. 2006). To exhaust, a petitioner

27    must fairly present his claim to the state's highest court. *Castille v. Peoples*, 489 U.S. 346, 351

28    (1989). Since petitioner never raised his cruel and unusual punishment claim in his petition for writ

Memorandum of Points and Authorities in Support of Answer - C 07-04227 CW

1  of habeas corpus or petition for review, he has not exhausted the above claims of ineffective

2  assistance of counsel. *James v. Giles*, 221 F.3d 1074, 1077 n.3 (9th Cir. 2000). However, this court

3  may deny (but not grant) the petition on the merits notwithstanding the failure to exhaust where the

4  claim is plainly meritless. 28 U.S.C. § 2254(b)(2)); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir.

5  2005).

6      In any event, petitioner's claims regarding the use of his prior convictions must fail.

7  Statutes authorizing more severe punishment against recidivists have a long tradition in this country.

8  The Supreme Court has repeatedly upheld recidivism statutes against challenges that they violate

9  prohibitions against double jeopardy, ex post facto laws, cruel and unusual punishment, due process,

10 equal protection, and privileges and immunities. *Parke v. Raley*, 506 U.S. 20, 26-27 (1992).

11 Enhanced punishment based on a prior conviction does not increase the penalty for the prior

12 conviction, but for the current offense, which is considered aggravated because of the offender's

13 criminal history. *Witte v. United States*, 515 U.S. 389, 400 (1995). Application of California's three

14 strikes law does not violate the prohibition against cruel and unusual punishment. *Ewing v.*

15 *California*, 538 U.S. 11, 30-31 (2003) (plur. opn. of O'Connor, J.); *Lockyer v. Andrade*, 538 U.S.

16 63, 77 (2003).

17     The use of petitioner's prior convictions does not violate the plea bargains which led to

18 those convictions, because petitioner is only being punished for the current offense. Petitioner

19 deserves greater punishment for his current first degree burglary conviction because he committed

20 the burglary even after he had two first degree burglary convictions. For the same reason, the

21 increased punishment does not violate the prohibition against ex post facto laws. Petitioner's

22 sentence does not constitute cruel and unusual punishment in light of his current offense and

23 criminal history. In addition, petitioner's cruel and unusual punishment claim, which merely states

24 the phrase without reference to any facts or legal authority, does not warrant habeas relief because

25 it is conclusory. *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations

26 without reference to specific facts do not warrant habeas relief).

27

28

Memorandum of Points and Authorities in Support of Answer - C 07-04227 CW

1

## CONCLUSION

2            For the reasons stated above, respondent respectfully asks this Court to deny the petition

3    for writ of habeas corpus.

4            Dated:  May 5, 2008

5                                        Respectfully submitted,

6                                        EDMUND G. BROWN JR.
                                         Attorney General of the State of California

7                                        DANE R. GILLETTE
                                         Chief Assistant Attorney General

8                                        GERALD A. ENGLER
                                         Senior Assistant Attorney General

9
                                         PEGGY S. RUFFRA
10                                       Supervising Deputy Attorney General

11

12                                       /s/ Jill M. Thayer
                                         JILL M. THAYER
13                                       Deputy Attorney General

14                                       Attorneys for Respondent

15    40249295.wpd
      SF2008400558
16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Answer - C 07-04227 CW

18

1

## TABLE OF CONTENTS

2

**Page**

3    STATEMENT OF THE CASE ................................................ 1

4    STATEMENT OF FACTS .................................................. 2

5    ARGUMENT ............................................................ 3

6       **I.**    **STANDARD OF REVIEW** ............................ 3

7      **II.**   **THE CALIFORNIA COURT OF APPEAL DID NOT
     UNREASONABLY APPLY SUPREME COURT AUTHORITY IN**

8            **DETERMINING THAT GIVING CALJIC NO. 2.02 INSTEAD OF
     CALJIC NO. 2.01 DID NOT CONSTITUTE FEDERAL**

9            **CONSTITUTIONAL ERROR** ......................... 4

10    **III.**  **THE CALIFORNIA COURT OF APPEAL'S DETERMINATION
     THAT THE TRIAL COURT'S EVIDENTIARY RULING DID**

11           **NOT VIOLATE PETITIONER'S RIGHTS TO DUE PROCESS
     OR EFFECTIVE ASSISTANCE WAS NOT AN**

12           **UNREASONABLE APPLICATION OF CLEARLY**

13           **ESTABLISHED SUPREME COURT AUTHORITY** ........ 7

          A.   Procedural Background ........................... 7

14             B.   Petitioner's Claim Is Not Preserved ............... 10

15             C.   The State Court's  Ruling Was Not Contrary To  Or An

16                  Unreasonable Application Of Supreme Court Authority .... 11

17    **IV.**  **THIS COURT LACKS JURISDICTION OVER THE
     RESTITUTION FINE ISSUE** ......................... 15

18

19     **V.**   **USE OF PETITIONER'S PRIOR STRIKE AND SERIOUS
     FELONY CONVICTIONS DID NOT VIOLATE HIS RIGHTS TO**

20           **DUE PROCESS AND EQUAL PROTECTION** ........... 16

21    **VI.**  **USE OF PETITIONER'S PRIOR STRIKE AND SERIOUS
     FELONY CONVICTIONS DOES NOT VIOLATE THE PLEA**

22           **BARGAINS WHICH LED TO THE PRIOR CONVICTIONS, EX
     POST FACTO PRINCIPLES OR THE PROHIBITION AGAINST**

23           **CRUEL AND UNUSUAL PUNISHMENT** ............. 16

24   CONCLUSION .......................................................... 18

25

26

27

28

1

## TABLE OF AUTHORITIES

2
**Page**

3
**Cases**

4
*Alberni v. McDaniel*
458 F.3d 860 (9th Cir. 2006)   14

5
*Bell v. Cone*
6
535 U.S. 685 (2002)   12

7
*California v. Trombetta*
467 U.S. 479 (1984)   11

8
*Cassett v. Stewart*
9
406 F.3d 614 (9th Cir. 2005)   17

10
*Castille v. Peoples*
489 U.S. 346 (1989)   16

11
*Chambers v. Mississippi*
12
410 U.S. 284 (1973)   11

13
*Clark v. Murphy*
331 F.3d 1062 (9th Cir. 2003)   14

14
*Conde v. Henry*
15
198 F.3d 734 (9th Cir. 2000)   14

16
*Early v. Packer*
537 U.S. 3 (2002)   10

17
*Estelle v. McGuire*
18
502 U.S. 62 (1991)   4, 6, 14

19
*Ewing v. California*
538 U.S. 11 (2003)   17

20
*Fry v. Pliler*
21
127 S.Ct. 2321(2007)   7

22
*Henderson v. Kibbe*
431 U.S. 145 (1977)   4, 6

23
*Herring v. New York*
24
422 U.S. 853 (1975)   12

25
*Holmes v. South Carolina*
547 U.S. 319 (2006)   11

26
*James v. Giles*
27
221 F.3d 1074 (9th Cir. 2000)   17

28

**TABLE OF AUTHORITIES  (continued)**

1

Page

2

3

*Jammal v. Van de Kamp*
926 F.2d 918 (9th Cir. 1991) ........................................................ 14

4

*Jones v. Gomez*
66 F.3d 199 (9th Cir. 1995) ......................................................... 17

5

6

*Lockyer v. Andrade*
538 U.S. 63 (2003) ...................................................................... 17

7

*Lord v. Wood*
184 F.3d 1083 (9th Cir. 1999) ..................................................... 13

8

9

*Luce v. United States*
469 U.S. 38 (1984) ...................................................................... 10

10

*McMillan v. Gomez*
19 F.3d 465 (9th Cir. 1994) .......................................................... 4

11

*Menendez v. Terhune*
422 F.3d 1012 (9th Cir. 2005) ...................................................... 6

12

13

*Michigan v. Lewis*
500 U.S. 145 (1991) .................................................................... 11

14

*Middleton v. McNeil*
541 U.S. 433 (2004) ...................................................................... 6

15

16

*Oyler v. Boles*
368 U.S. 448 (1962) .................................................................... 16

17

*Parke v. Raley*
506 U.S. 20 (1992) ...................................................................... 17

18

19

*People v. Collins*
42 Cal.3d 378 (1986) ................................................................... 10

20

*Rose v. Lundy*
455 U.S. 509 (1982) .................................................................... 16

21

22

*Strickland v. Washington*
466 U.S. 668 (1984) .................................................................... 12

23

*Sullivan v. Louisiana*
508 U.S. 275 (1993) ...................................................................... 5

24

25

*United States v. Johnson*
903 F.2d 1219 (9th Cir. 1990) ...................................................... 10

26

*United States v. Thiele*
314 F.3d 399 (9th Cir. 2002) ....................................................... 15

27

28

**TABLE OF AUTHORITIES** **(continued)**

Page

*Walters v. Maass*
45 F.3d 1355 (9th Cir. 1995)                                    11

*Williams v. Stewart*
441 F.3d 1030 (9th Cir. 2006)                                  16

*Williams v. Taylor*
529 U.S. 362 (2000)                                          3, 14

*Williamson v. Gregoire*
151 F.3d 1180 (9th Cir.1998)                                   15

*Witte v. United States*
515 U.S. 389 (1995)                                            17

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                          3, 15

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                             12

**Statutes**

California Evidence Code
        § 1101(b)                                            7, 12

California Penal Code
        § 459                                                   1
        § 460(a)                                                1
        § 667(a)-(i)                                            1
        § 1170.12                                               1

United States Code, Title 28
        § 2254(a)                                              15
        § 2254(b)                                              16
        § 2254(b)(2)                                           17
        § 2254 (c)                                             16
        § 2254 (d)(1)                                           3
        § 2255                                                 15

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)    3, 10, 12

California Jury Instructions, Criminal
        No. 2.01                                              4-7
        No. 2.02                                              4-7