1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HUNG Q. HO,                                )    No. C 07-04227 CW (PR)
                                           )
       Petitioner,                   )    ORDER DENYING PETITION
                                           )    FOR A WRIT OF HABEAS
    v.                                   )    CORPUS
                                           )
MIKE KNOWLES, Warden,                      )
                                           )
       Respondent.                   )
_____)

INTRODUCTION

     Petitioner Hung Q. Ho, a prisoner of the State of California
who is incarcerated at the California Medical Facility in Vacaville
(docket #4), filed this <u>pro se</u> petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  The Court ordered Respondent to show
cause why the petition should not be granted.  Respondent has filed
an answer to the petition and a memorandum of points and
authorities and exhibits in support thereof.  Petitioner has filed
a traverse to the answer.

     For the reasons outlined below, the Court DENIES the petition
for a writ of habeas corpus on all claims.

PROCEDURAL HISTORY

     On May 2, 2005, a jury found Petitioner guilty of first degree
burglary and the court found true allegations that Petitioner had

1   two prior "serious" felony convictions that also qualified as

2   "strikes" under California Penal Code Sections 667(a)-(i) and

3   1170.12.  Resp't Ex. 1 (Clerk's Transcript) at 128-29.[1]  On July

4   22, 2005, the court sentenced Petitioner to a term of twenty-five

5   years to life consecutive to ten years in state prison, and ordered

6   him to pay a restitution fine of $10,000.  Id.

7      Petitioner filed a direct appeal to the California Court of

8   Appeal.  On May 1, 2006, the Court of Appeal affirmed the jury

9   verdict in an unpublished, written opinion.  On July 12, 2006,

10   Petitioner's petition for review to the Supreme Court of California

11   was denied, and on May 9, 2007, his state petition for a writ of

12   habeas corpus was also denied.

13                       STATEMENT OF FACTS

14      In its written opinion, the California Court of Appeal

15   summarized the factual background as follows:

16          Hung Thi Ho has lived in the same house in San Jose
         for 21 years.  There is a gate between her front and back

17         yards.  To open the gate, you have to reach over the top
         of it and undo a latch.  In the back of the house is a

18         sliding glass door with a window next to it.  The window
         has a lock.

19

20          On February 18, 2004, Ms. Ho bought a desk from
         Best Buy.  Two Vietnamese men delivered the desk on

21         either February 21 or 27, 2004.  Ms. Ho took time off
         work and was there to meet the delivery men.  One of

22         them knocked on the front door.  She opened the door for
         them and told them to put the desk in her daughter's

23         room.  They brought the desk in through the front door
         and took it to her daughter's room. They went back to

24         the truck to get the boards needed to make the shelves,
         then came back and assembled the desk.  Afterwards, they

25         left through the front door.  Ms. Ho watched the two men
         the entire time they were in her house, except while

26

27        [1]The probation report stated that Petitioner had three prior
   felony and nine misdemeanor convictions.  Resp't Ex. 1 at 194-95.

28

they assembled the desk. At no time did the men go into her kitchen, into the room with the sliding-glass door, or into her backyard.

Anthony Nguyen, as assistant manager at Best Buy, testified that defendant and Minh Tran delivered Ms. Ho's desk. At the time, defendant was a part time employee of Best Buy. Mr. Tran testified that he and defendant went to Ms. Ho's front door with the desk. When Ms. Ho answered the door they took the desk inside. It took them two trips to bring the desk in, and then they assembled it with a screwdriver and ratchet. They left through the front door. They never went into the kitchen or the backyard.

On April 27, 2004, Ms. Ho left her house for work around 9:00 a.m. The back window was locked when she left. Sometime in the afternoon her daughter called to tell her that a window on the back of her house was broken. She told her daughter to leave the house and then she called the police. She went home and found that the window on the back of her house was broken, its screen was off, and a screwdriver was near the door. She also found that a VCR and a DVD player were missing from the room next to the kitchen, and a VCR and a DVD player were missing from her daughter's room. An officer came to her home that same day.

Detective Robert Fischer was dispatched to Ms. Ho's house at approximately 4:00 p.m. on April 27, 2004. He spoke with Ms. Ho and went inside the house. He saw a window at the back of the house had broken glass on the inside windowsill. Two panes at the lower center of the window, near the middle latch and lock, were broken. The window screen was on the ground in the backyard to the left of the window. He dusted the window for fingerprints. He found several smudges and one clear print on the outside of the window, to the left of the broken panes. A screwdriver found inside the home was given to him by Ms. Ho's daughter as evidence.

Michael Valverde testified as an expert in fingerprint collection, documentation, comparison, and analysis. He was one of two examiners who compared the latent print Detective Fischer found with the fingerprints in his database. He determined that the latent print matched the left thumb on defendant's 1987 10-print fingerprint card. The match was verified by another fingerprint examiner. Valverde testified on cross-examination that a fingerprint can remain on a glass surface under optimum conditions for years, so he has no idea how long the latent print was on the surface from where it was collected.

Ms. Ho testified that she does not know defendant,

nor does she recognize him from the desk delivery or otherwise. He is not related to her and has never lived with her or her family. She never gave him permission to go into her backyard or her house, and she did not give him permission to take the VCRs or DVD players from her house.

People v. Ho, 2006 WL 1150834 at *1-2 (Cal. App. 6th Dist. 2006) (Resp't Ex. 6).

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. Clark v. Murphy, 331 F.3d 1062, 1067 (9th. Cir. 2003).

Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error

**United States District Court**
For the Northern District of California

1   justifies habeas relief only if the error resulted in "actual

2   prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

3       The only definitive source of clearly established federal law

4   under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as

5   of the time of the relevant state court decision. Williams v.

6   Taylor, 529 U.S. 362, 412 (2000).

7       To determine whether the state court's decision is contrary

8   to, or involved an unreasonable application of, clearly established

9   law, a federal court looks to the decision of the highest state

10  court that addressed the merits of a petitioner's claim in a

11  reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th

12  Cir. 2000). If the state court only considered state law, the

13  federal court must ask whether state law, as explained by the state

14  court, is "contrary to" clearly established governing federal law.

15  Lockhart v. Terhune, 250 F.3d 1223, 1230 (9th Cir. 2001).

16                              DISCUSSION

17  I.   FAILURE TO GIVE CALJIC NO. 2.01

18       A.   Petitioner's Claim

19       Petitioner claims that the trial court violated his federal

20  right to due process by using the wrong jury instruction on

21  circumstantial evidence. Specifically, he claims that the trial

22  court should have instructed the jury pursuant to CALJIC No. 2.01

23  rather than CALJIC No. 2.02.[2] Petitioner argues that CALJIC No.

24

25       [2]CALJIC No. 2.01 reads:
         However, a finding of guilt as to any crime may not
26  be based on circumstantial evidence unless the proved
    circumstances are not only (1) consistent with the theory
27  that the defendant is guilty of the crime, but (2) cannot
    be reconciled with any other rational conclusion. [¶]
28  Further, each fact which is essential to complete a set
                                        (continued...)

                                5

2.02 should only be given in lieu of CALJIC No. 2.01 when specific intent is the only element of the case that rests on circumstantial evidence, whereas here all of the elements, not just specific intent, rested on circumstantial evidence. Petitioner claims that by using No 2.01 instead of No. 2.02, the trial court lowered the prosecution's burden of proof in violation of due process.

B.   State Court Analysis

The Court of Appeal's summary of the relevant facts and analysis on this issue are as follows:

---

[2](...continued)
of circumstances must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence [as to any particular count] permits two reasonable interpretations, one of which points to the defendant's guilt and the other to [his][her] innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to [his][her] guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.

CALJIC No. 2.02 reads:
     The specific intent with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not find the defendant guilty of the crime charged unless the proved circumstances [are] not only, one, consistent with the theory that the defendant had the required specific intent but, two, can't be reconciled with any other rational conclusion. [¶] Also, if the evidence as to any specific intent permits two reasonable interpretations, one of which points to the existence of the specific intent and the other to its absence, you must adopt that interpretation which points to its absence. If on the other hand one interpretation of the evidence as to the specific intent appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.

6

In instructing the jury, the court gave CALJIC No. 2.00 [direct and circumstantial evidence-inferences], and CALJIC No. 2.02 [sufficiency of circumstantial evidence to prove specific intent or mental state]. The court did not give, and the record does not indicate that defense counsel requested, CALJIC No. 2.01 [sufficiency of circumstantial evidence-generally].

The People concede that the court erred in failing to give CALJIC No. 2.01 rather than CALJIC No. 2.02. We agree with the concession. The trial court has a sua sponte duty to instruct the jury with CALJIC No. 2.01 on the effect to be given circumstantial evidence when circumstantial evidence is substantially relied on for proof of guilt. CALJIC Nos. 2.01 and 2.02 are alternative instructions. CALJIC No. 2.01, "[t]he general instruction on sufficiency of circumstantial evidence[,] is a more inclusive instruction on sufficiency of circumstantial evidence than [CALJIC No. 2.02,] the instruction on sufficiency of circumstantial evidence to prove specific intent or mental state, and the former is the proper instruction to give unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state." (People v. Cole (2004) 33 Cal. 4th 1158, 1222; see also Use Notes to CALJIC Nos. 2.01 and 2.02 (Oct. 2005 ed.).)

The question remains whether the error was prejudicial. Defendant first contends that failure to give CALJIC No. 2.01 was federal constitutional error. He argues that, because the principles enunciated in CALJIC No. 2.01 flow from the reasonable doubt standard, and error in instructing on reasonable doubt constitutes federal constitutional error (see Sullivan v. Louisiana (1993) 508 U.S. 275, 278-282), failure to give CALJIC No. 2.01 constitutes federal constitutional error. We disagree. The error here was instructing on the sufficiency of circumstantial evidence, not in instructing on reasonable doubt. The court instructed the jury with CALJIC No. 2.90, which correctly defines reasonable doubt. (See People v. Hearon (1999) 72 Cal.App.4th 1285, 1286-1287.) Therefore, federal constitutional error has not been shown.

Defendant correctly contends that, under California law, the error in giving CALJIC No. 2.02 rather than CALJIC No. 2.01 was prejudicial if there was a reasonable probability that he would have been acquitted had CALJIC No. 2.01 been given instead. (See People v. Watson (1956) 46 Cal.2d 818, 836.) Defendant argues that the "key principle found in both [CALJIC] Nos. 2.01 and 2.02 is that the defendant is entitled to an acquittal if the inferences to be drawn from circumstantial evidence are equally consistent with both guilt and innocence. Here,

7

the jury was misled into believing that this principle applied only to the issue of specific intent and not to the issue of whether the presence of [defendant's] fingerprint adequately proved that he was the perpetrator." "Since [CALJIC] No. 2.02 was given as to the specific intent element of burglary, the jury naturally believed that the principle stated in the instruction did not apply to the proof of any other factual matter." Defendant cites <u>People v. Salas</u> (1976) 58 Cal.App.3d 460 (<u>Salas</u>), disapproved on another point in <u>People v. Wolcott</u> (1983) 34 Cal.3d 92, 109, in support of his argument.

In their arguments to the jury, the prosecutor and defense counsel discussed and applied the circumstantial evidence rule. In his opening argument, the prosecutor told the jury: "Now, the thing with circumstantial evidence, and there's an instruction which if there are two interpretations of that evidence, just like baseball, tie goes to the runner. If there are two reasonable interpretations of the evidence, the benefit goes to the defendant. That's the way the system is set up. All this is designed to not make the defendant look guilty. From the get go, this system is designed to give him a lot of breaks. And one of the breaks is if circumstantial evidence has two reasonable interpretations and one of them benefits the defendant, that's the one you have to adopt. The key word is reasonable and rational. If there's two interpretations and only one of them is reasonable, only one of them is rational, then even if the unreasonable one benefits the defendant, you adopt the reasonable interpretation. If more than one reasonable interpretation, then you choose the one that benefits the defendant. If you only have one reasonable interpretation though as in this case, you adopt that interpretation regardless whether or not it benefits the defendant." Defense counsel argued that the circumstantial evidence presented was insufficient to prove that defendant committed the charged burglary. In closing, the prosecutor argued that, under the circumstantial evidence rule, his view of the evidence was the only reasonable explanation for the evidence.

In this case, it appears that defendant did not object to the court's proposal of giving CALJIC No. 2.02 rather than CALJIC No. 2.01. Moreover, it appears that the parties and the court discussed the issue and that defendant stipulated to the instructions as given. While it appears counsel for defendant made a reasoned decision to request the more limited instruction, we need not decide whether defendant invited the error because we find the error harmless.

In determining whether instructional error is prejudicial, the California Supreme Court has declared

8

that the reviewing court may reverse a conviction "'only
if, "after an examination of the entire cause, including
the evidence" [citation], it appears "reasonably
probable" the defendant would have obtained a more
favorable outcome had the error not occurred.'" (People
v. Lasko (2000) 23 Cal.4th 101, 111.) In this case, the
court gave CALJIC No. 2.00, the general instruction on
direct and circumstantial evidence and making possible
inferences, as well as CALJIC No. 2.02. Both CALJIC Nos.
2.01 and 2.02 tell jurors that in order to convict a
defendant key circumstantial evidence of the prosecution
must be irreconcilable with any conclusion other than
guilt and that if two reasonable interpretations of this
evidence exist, the interpretation favorable to the
defendant must be adopted. The court also gave
instructions on witness credibility (CALJIC Nos. 2.20 and
2.21.1) and the presumption of innocence and the burden
of proof (CALJIC No. 2.90).

...

Based on the instructions and arguments of counsel, the
jury was fairly advised how to evaluate circumstantial
evidence and was instructed to draw reasonable inferences
and weigh the competing inferences from the evidence.
Here, although the more inclusive language of CALJIC No.
2.01 might have been more suitable, there was no
possibility that the jury would be misled by CALJIC No.
2.02 into believing that the requirements embodied in
that instruction could not be applied to the question of
whether defendant entered Ms. Ho's residence with the
required specific intent, as was required for the
conviction of first degree burglary. Defendant does not
contest the sufficiency of the evidence to support his
conviction. Accordingly, we conclude that it is not
reasonably probable that defendant would have achieved a
better result had CALJIC No. 2.01 been given rather than
CALJIC No. 2.02. (People v. Watson, supra, 46 Cal.2d at
p. 836; People v. Lasko, supra, 23 Cal.4th at p. 111.)

Ho, 2006 WL 1150834 at *8-10.

C.   Applicable Federal Law

The Due Process Clause of the Fourteenth Amendment protects

the accused against conviction except upon proof beyond a

reasonable doubt of every fact necessary to constitute the crime

charged.   In re Winship, 397 U.S. 358, 364 (1970).

To obtain federal collateral relief based on an error in the

jury charge, a petitioner must show that the ailing instruction by

9

itself so infected the entire trial that the resulting conviction violated due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The fact that the jury instruction was incorrect under state law is not a basis for habeas relief.  Id.  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.

D.  Analysis

Although the trial court used CALJIC No. 2.02 instead of No. 2.01, this did not impinge on Petitioner's due process right not to be found guilty except upon proof of every element of the crime beyond a reasonable doubt.  To begin with, the instructions addressed circumstantial evidence and did not discuss the reasonable doubt standard at all.  The jury was properly informed of the correct reasonable doubt standard in another instruction pursuant to CALJIC No. 2.90.  See Lisenbee v. Henry, 166 F.3d 997, 999-1000 (9th Cir. 1999) (finding CALJIC No. 2.90 constitutionally fit).  Furthermore, CALJIC No. 2.02, like CALJIC No. 2.01, properly explained to the jury that if two reasonable interpretations of circumstantial evidence exist, the interpretation favorable to the defendant must be used.  As noted by the Court of Appeal, counsel also explained this point in their argument to the jury.  Ho, 2006 WL 1150834 at *10.

Based on the instructions and trial record as a whole, there is no indication that the use of CALJIC No. 2.02 instead of No. 2.01 would have caused the jury to believe that it did not have to find all the elements of the crime beyond a reasonable doubt.  Accordingly, the California Court of Appeal's conclusion that the

1  state law error in the jury instruction did not rise to the level

2  of federal constitutional error was neither contrary to nor an

3  unreasonable application of federal law.

4  II.  RIGHT TO PRESENT A DEFENSE

5      A.  Petitioner's Claim

6      Petitioner claims that an evidentiary ruling by the trial

7  court precluded him from presenting the defense that he placed the

8  finger print on the window, not when the house was burglarized in

9  April, 2004, but when he delivered the desk in February, 2004.

10     B.  State Court Analysis

11     The Court of Appeal summarized the evidentiary rulings at

12  trial as follows:

13         Defendant moved in limine to exclude any reference to his
           prior convictions. The prosecutor sought to introduce,
14         for purposes of impeachment, four of defendant's prior
           convictions: a 1987 conviction for first degree burglary,
15         a 1987 conviction for second degree burglary, a 1989
           conviction for first degree burglary, and a 1994
16         conviction for auto burglary. The court ruled, pursuant
           to Evidence Code section 352, that it would not admit the
17         priors for impeachment.

18         The prosecutor separately moved in limine to admit the
           1987 and 1989 first degree burglary convictions under
19         Evidence Code section 1101, subdivision (b), as evidence
           of defendant's intent to steal as well as to show the
20         absence of an innocent mistake. The court ruled as
           follows: "I have ruled tentatively and I will rule at
21         this time as a final ruling that the People's
           case-in-chief should not include these [Evidence Code
22         section] 1101(b) items unless the defendant puts on
           evidence for or puts on cross-examination or insinuates
23         there is a mistake or an innocent way the fingerprint got
           on the window where the home was broken into. We had a
24         discussion about where the line would be drawn. [Defense
           counsel] understood that beyond a reasonable doubt he
25         could argue and he could do his job and he could
           vigorously defend his client, but if he says things such
26         as quote, well, we all know what happens when delivery
           guys go to a home and check if people are there, that
27         that would open the door because it is indicating that
           the fingerprint got on there by a mistake or innocent way
28         and puts the specific intent at issue. So that there is

no problem in this area before any evidence of any prior
criminality of the defendant is mentioned in any way in
front of the jury I am ordering that both attorneys need
to get a ruling from the judge by way of approaching or
taking a recess so that it's not done on the fly, but
that the court is allowed critical analysis and
reconsideration. And it's not clear whether the defendant
is testifying yet or not, that would also be a factor in
the court's decision depending on what the testimony is."

...

My prior ruling regarding if the defendant puts on a
defense that the defendant put the fingerprint on the
backyard window when he was looking for the occupants in
the house or it implies that, then the intent is squarely
at issue and the priors would come in under [Evidence
Code section 1101, subdivision (b) ]. The People argued
previously that intent is an issue whenever the declarant
pleads not guilty. I indicated that is true, however, the
court has taken a conservative view to protect the
defendant's rights."

Defense counsel then argued: "Because of the court's
ruling under [Evidence Code section 1101, subdivision
(b)] and based on the age of the priors, and I know that
they are similar in nature, I think it's limiting the
defense to what I can argue. And I can basically argue
the science of the fingerprints is what the court has
ruled, and the other area I'm going to argue is-or at
least cross-examine witnesses on is their memory as to
what happened during that delivery. Did they-are they
sure that they remember everywhere that delivery people
went? And I don't know if I can argue that either. And so
I'd like a ruling on that if I can probe their memories
as to the day of the delivery and where everybody went or
am I opening up the door there? And I think-and that's
all I can-that's all the defense has in this case. I
think the ruling based on the age of the priors somewhat
violates my client's due process both under the 14th, 5th
and 6th amendments because we're kind of hamstrung as to
what we can argue in this case."

After the prosecutor stated that he would "find that
objectionable if those questions were asked," the court
stated: "Okay. So I guess the question would really go to
what are you attempting to do when you're examining them?
Are you attempting to lay out your defense that he went
around the backyard and looked in the window and put his
finger on the window? Are you simply trying to test their
memories about whether this person really came to the
door or not or was it the other fellow, et cetera? And
I'll just have to see when I see."

The prosecutor argued: "While I agree that the defense is

12

limited, I think we can't forget the fact that the defense is limited by its own choice to try and avoid creating a situation where rebuttal evidence as to a defense theory becomes viable. Defense is not limited in any way. The problem is they just don't like the evidence that's going to become relevant if they go down that line of defense. It's the defendant's choice. If he wants to argue that the print was left there in February, he's entitled to. I want the record to be clear. He's not being prohibited from doing that. The problem is then it becomes relevant this past situation, actually two situations, where the same type of victim, the same type of day, same type of crime, same type of item stolen, becomes very probative as to whether or not he's telling the truth when he says or when he argues that he left the print there two months before the burglary happened."

After all witnesses had testified, but before the parties rested, in a hearing outside the presence of the jury, the prosecutor contended that defense counsel's cross-examination of Ms. Ho and Mr. Tran was intended to create an inference that defendant could have left his print somewhere else in the house without either of them being able to see. He contended that defendant's cross-examination of these witnesses was designed to undermine the witnesses' credibility, and that his cross-examination of Mr. Valverde was meant to bolster his claim that defendant's print could have been left in February and survived through April. The court responded: "I find that the questions to this point would not rise to the level of me overruling my in limine ruling on the [Evidence Code section] 1101(b) so that ruling will stand. We still have the closing arguments. We'll see how that plays out, how [defense counsel] uses the information or doesn't use the information, and then we'll look at it again."

Defendant did not testify. After the prosecutor rested, defense counsel rested without calling any witnesses.

Ho, 2006 WL 1150834 at *2-6.

The Court of Appeal held that the trial court did not deny Petitioner the right to present his defense. Ho, 2006 WL 1150834 at *7. The ruling on the motions in limine did not preclude Petitioner from putting forth his defense. He could have cross-examined the prosecution's witnesses about the fingerprints being placed in February. Defense counsel's decision not to do so was a matter of trial strategy. Id.

13

The appellate court further found that Petitioner's reliance on <u>Conde v. Henry</u>, 198 F.3d 734 (9th Cir. 1999), was misplaced. In <u>Conde</u>, the defense had two inconsistent theories of the case and the trial court's ruling erroneously precluded defense counsel from presenting evidence on and arguing one of his alternative theories.  <u>Id.</u> at 739.  In Petitioner's case, the trial court's ruling did not prohibit defense counsel from presenting evidence on or arguing Petitioner's theory of the case.  <u>Ho</u>, 2006 WL 115083, at *7.  The trial court simply ruled that if Petitioner intended to argue that his finger print was placed at Ms. Ho's house in February, then the prosecution would be permitted to introduce rebuttal evidence of Petitioner's prior burglaries.  <u>Id.</u> The Court of Appeal noted that the trial court's ruling placed Petitioner in a situation similar to the dilemma often faced by defendants who must decide whether or not to testify after the trial court rules that their priors are admissible for impeachment.  <u>Id.</u>  In that situation, the United States Supreme Court has held that a defendant must testify and be impeached in order to preserve the point for appeal.  <u>See</u> <u>Luce v. United States</u>, 469 U.S. 38, 41-43 (1984); <u>see</u> <u>also</u> <u>People v. Collins</u>, 42 Cal.3d 378, 383-88 (1986) (adopting rule in <u>Luce</u>). Petitioner here did not make the triggering argument and thus did not preserve the point.  The Court of Appeal concluded that the trial court's ruling did not violate Petitioner's constitutional rights to present a defense.  <u>Ho</u>, 2006 WL 115083, at *7.

C.   Applicable Federal Law

A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates

14

United States District Court
For the Northern District of California

federal law.  <u>Walters v. Maas</u>, 45 F.3d 1355, 1357 (9th Cir. 1995).
The Sixth Amendment affords an accused in a criminal trial the
right to present a defense.  <u>Chambers v. Mississippi</u>, 410 U.S.
284, 294 (1973).

D.    Analysis

The Court of Appeal reasonably concluded that, under federal
law, Petitioner was not denied his right to present a defense.
Unlike <u>Conde</u>, Petitioner was not affirmatively prevented from
presenting his defense.  <u>Cf.</u> <u>Conde</u>, 198 F.3d at 740-41 (the trial
court affirmatively prevented the defendant from presenting one of
two theories of his defense).  Here, the trial court simply ruled
that it would allow the prior convictions into evidence if
Petitioner argued that he innocently placed his fingerprint in Ms.
Ho's house in February.  The trial court did not prohibit
Petitioner from making that argument; the decision whether to do
so was in the hands of Petitioner and his counsel.  That
Petitioner's prior convictions would have been admitted if he did
so did not prevent him from presenting the defense any more than
it prevented him from testifying.  Petitioner and defense counsel
made a strategic decision not to present a defense under the
circumstances, but that decision was not forced by the trial
court.  <u>Cf.</u> <u>Luce</u>, 469 U.S. at 41-43 (holding defendant must
testify and be impeached in order to preserve for appeal challenge
to trial court's ruling prior convictions are admissible for
impeachment).

Accordingly, the Court of Appeal's determination that
Petitioner's Sixth Amendment right to present a defense was not
violated by the trial court's evidentiary ruling was neither

contrary to nor an unreasonable application of federal law.

In addition, the trial court's ruling did not violate Petitioner's right to due process because the evidence of his prior residential burglaries was relevant for at least some permissible purpose. "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process". Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). Here, the prior convictions had some permissible purpose, namely as evidence that Petitioner had the intent to commit the burglary in this case. Consequently, the state court's denial of this claim was neither contrary to nor an unreasonable application of federal due process law.

III. RESTITUTION FINE

Petitioner claims that he was deprived of the effective assistance of counsel when his trial attorney failed to object to the $10,000 restitution fine. Because this claim does not affect the validity or duration of Petitioner's confinement and a favorable determination would not entitle Petitioner to be released from custody at an earlier date, the claim is not a cognizable basis for habeas relief under 28 U.S.C. § 2254. See Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) ("habeas jurisdiction is absent where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence"); cf. United States v. Thiele, 314 F.3d 399, 401 (9th Cir. 2002) (holding that review of restitution orders is not properly brought in a habeas petition). Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

//

IV.   SELECTIVE APPLICATION OF PRIOR STRIKES

A.   Petitioner's Claim

Petitioner claims that the use of his prior strikes and serious felony convictions for sentence enhancements in the present case violated his rights to due process and equal protection because the convictions had not been used against him as priors previously.  Petitioner believes that, because he did not receive sentence enhancements based on prior felony convictions when he was previously convicted in California, in 1987 and 1989,[3] it was improper to use prior convictions to enhance his sentence in 2005.

B.   Analysis

Petitioner did not raise this claim on direct appeal to the California Court of Appeal, and therefore a reasoned state court opinion is not available.  The fact that sentence enhancements for prior convictions had not been applied to Petitioner previously did not preclude the trial court from applying such enhancements to the 2005 conviction, as long as there is no evidence that the prosecution was motivated by any improper reason.  The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.  Oyler v. Boles, 368 U.S. 448, 456 (1962).  To violate the constitution, it must be "stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."  Id.  Petitioner has not alleged or attempted to

_____

[3] Petitioner refers to a 1998 felony conviction, but this appears to be a typographical error because the record indicates that his two prior felony convictions in California were in 1987 and 1989.  Resp't. Ex. 1 at 193-94.

1   show that imposition of the enhancements here was based on his

2   race, religion, or any other protected class.  Absent such a

3   showing, the exercise of selectivity in the application of the

4   enhancements is not a federal constitutional violation.[4]

5   V.   EX POST FACTO AND CRUEL AND UNUSUAL PUNISHMENT CLAIMS

6        A.   Petitioner's Claim

7        Petitioner claims that the use of his prior convictions and

8   prison terms violated his prior plea agreements and, therefore,

9   violated his rights under the Ex Post Facto Clause, the Due

10  Process Clause and the Eighth Amendment.[5]

11       B.   Analysis

12       Petitioner did not raise this claim on direct appeal to the

13  California Court of Appeal, and therefore a reasoned state court

14  opinion is not available.  The application of an enhancement due

15  to a prior conviction is not a violation of the Ex Post Facto

16  Clause of the United States Constitution.  See McDonald v.

17  Massachusetts, 180 U.S. 311, 312-13 (1901); see also United States

18  v. Sorenson, 914 F.2d 173, 174 (9th Cir. 1990) (dismissing ex post

19  facto challenge as meritless), cert. denied, 498 U.S. 1099 (1991).

20  The enhancement is not a penalty for the prior offense.  See

21

22       [4] More general challenges to the use of priors to enhance
    current sentences, based on contentions of equal protection, bill
23  of attainder and double jeopardy against recidivist statutes such
    as California Penal Code section 667 and 667.5 generally have been
24  dismissed as meritless.  See Jackson v. Nelson, 435 F.2d 553, 553
    (9th Cir. 1971).

25

26       [5] Petitioner lists the Eighth Amendment, but he offer any
    argument as to how an alleged breach of his prior plea agreements
    might have violated his Eighth Amendment rights.  He cites no
27  authority, and this Court is aware of none, that the breach of a
    plea agreement may violate the Eighth Amendment.  In any event, for
28  the reasons discussed below, the sentence enhancements did not
    breach any previous plea agreements.

18

1  <u>McDonald</u>, 180 U.S. at 312-13.  It is the repetitive nature of the

2  present offense that the enhancement punishes.  <u>See</u> <u>id.</u>  Here, the

3  enhancements based on Petitioner's prior offenses did not violate

4  the Ex Post Facto Clause because they were not a penalty for the

5  prior offenses, but rather for Petitioner's being a repeat

6  offender.

7      Using the prior convictions to enhance Petitioner's current

8  sentence also did not breach any previous plea bargain, or violate

9  his constitutional rights to due process or under the Eighth

10  Amendment.  The prosecution's breach of a plea agreement may

11  constitute a violation of due process.[6]  <u>See</u> <u>Santobello v. New</u>

12  <u>York</u>, 404 U.S. 257, 262 (1971).  Petitioner has not alleged or

13  indicated that anything in any previous plea bargain precluded his

14  convictions from later being used to enhance a sentence on a

15  future conviction.

16      Moreover, the sentence enhancements did not render

17  Petitioner's prior guilty pleas involuntary, in violation of due

18  process.  A defendant must be advised of the range of allowable

19  punishment that will result from his plea; however, the court does

20  not need to advise him of all possible collateral consequences.

21  <u>See</u> <u>Torrey v. Estelle</u>, 842 F.2d 234, 235 (9th Cir. 1988).  Among

22  the "collateral" consequences of which a defendant need not be

23  advised is the possibility that the conviction pursuant to the

24  guilty plea will later be used to as a sentence enhancement.  <u>See</u>

25  _____

26      [6] Petitioner offers no separate argument about the Eighth
   Amendment.  He cites no authority, and this Court is aware of none,
27  that the breach of a plea agreement may violate a defendant's
   Eighth Amendment rights.  In any event, for the reasons discussed
28  below, the sentence enhancements did not breach any prior plea
   agreements.

United States v. Garrett, 680 F.2d 64, 65-66 (9th Cir. 1982).
Even if Petitioner was not aware that his prior convictions
subject to plea agreements could be used for sentence
enhancements, his due process rights were not violated.

Accordingly, Petitioner's claim that the sentence
enhancements violated his constitutional rights fails.

CONCLUSION

The petition for a writ of habeas corpus is DENIED.  The
clerk shall enter judgement and close the file.  All pending
motions are terminated.  Each party shall bear his own costs.

IT IS SO ORDERED.

DATED: 2/8/10

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

HUNG Q HO,

                  Plaintiff,

  v.

K PROSPER et al,

                  Defendant.
                       /

Case Number: CV07-04227 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 8, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Hung Q. Ho D-73820
CA Medical Facility
I-1-133-Low
P.O. Box 2000
Vacaville, CA 95696-2000

Dated: February 8, 2010

                                  Richard W. Wieking, Clerk
                                  By: Sheilah Cahill, Deputy Clerk